IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID SCHAFER, TIM PERRY,            )
PAT MARTIN, MICHAEL MURRAY,          )
individually and on behalf of        )
all others similarly situated,       )
and SAM R. WEXLER,                   )
                                     )
            Plaintiffs,              )
                                     )
       v.                            )   No. 07 C 2316
                                     )
EXELON CORPORATION, et al.,          )
                                     )
            Defendants.              )
-------------------------------------)
                                     )
SAUL R. WEXLER, individually and     )
on behalf of all others similarly    )
situated,                            )
                                     )
            Plaintiff,               )
                                     )
       v.                            )   No. 07 C 2318
                                     )
COMMONWEALTH EDISON CO., et al.,     )
                                     )
            Defendants.              )

## OPINION AND ORDER

In two putative class actions challenging retail electric rates, plaintiffs seek to represent 3.7 million electricity customers of Commonwealth Edison Company ("ComEd") and 1.2

million customers of three Ameren companies.[1] The two cases were filed in the Circuit Court of Cook County styled <u>Schafer, et al. v. Exelon Corp., et al.</u>, No. 07 CH 09036 (Cir. Ct. Cook Cy., Ill.), and <u>Wexler, et al. v. Commonwealth Edison Co., et al.</u>, No. 07 CH 08599 (Cir. Ct. Cook Cy., Ill.), and removed to this court by defendants. The complaints allege that market-based wholesale electricity rates ("MBR tariffs") set at a 2006 Illinois wholesale electric power auction regulated by the Federal Energy Regulatory Commission ("FERC")[2] are unreasonably high. Fifteen electric power suppliers ("wholesale defendants") participated in the auction. As a result of the auction, electricity was sold to the utility defendants, and allegedly unreasonable costs were passed on to customers in the putative class.

Defendants Morgan Stanley Capital Group Inc. and Constellation Energy Commodities Group, Inc. filed timely notices of removal to which all defendants consented. Plaintiffs did not move for remand. Presently pending are defendants' motions to dismiss both actions.[3]

---

[1] ComEd and the Ameren companies will be jointly referred to as the "utility defendants."

[2] FERC was formerly the Federal Power Commission ("FPC").

[3] Named plaintiffs have not moved for class certification. The putative claims will be dismissed without prejudice.

## JURISDICTION

Defendants assert that the claims are removable because they present a question under federal law and also because the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, provides this court with jurisdiction. Plaintiffs state that the complaints seek relief for conspiracy under the Illinois Consumer Fraud Act, 735 ILCS 5/2-801, deny the application of federal law, and state in their complaints that CAFA does not apply because more than two-thirds of the plaintiff class members are citizens of the State of Illinois and several primary defendants are citizens of the State of Illinois. See 28 U.S.C. § 1332(d)(4). Since it appears that the complaints raise issues relating to the application of federal law, it is unnecessary for the court to determine whether jurisdiction also exists under CAFA.

A complaint not expressly pleading a federal question may be removed when the claims implicate significant federal issues. Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312-14 (2005); Kurz v. Fidelity Mgmt. & Research Co., 2007 WL 3231423 *4 (S.D. Ill. Oct. 30, 2007). Federal courts are required to look beyond the face of the complaint to determine whether the complaint implicates or is controlled by federal law. Burda v. M. Ecker Co., 954 F.2d 434, 438 (7th Cir. 1992); Vivas v. Boeing Co., 486 F. Supp. 2d 726, 729 (N.D. Ill. 2007). The mere fact that a defense, even one of preemption, is based on

federal law will not suffice as a basis for removal. However, removal will be appropriate if a federal statute so completely preempts the field that a claim otherwise denominated as being pursuant to state law must be viewed as a claim under the federal statute. Bennett v. Southwest Airlines Co., 493 F.3d 762, 762-63 (7th Cir. 2007); Adkins v. Illinois Central R. Co., 326 F.3d 828, 835 (7th Cir. 2003); Rogers v. Tyson Foods, Inc., 308 F.3d 785, 787-88 (7th Cir. 2002); Kurz, 2007 WL 3231423 at *4.

Plaintiffs' claims are controlled by federal law because they are all based on allegations that the wholesale power rates regulated by FERC are unreasonable. See Nantahala Power & Light Co. v. Thornburg, 476 U.S. 953, 966 (1986) (Congress granted FERC exclusive authority over interstate wholesale power rates); California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 839-41, amended, 387 F.3d 966 (9th Cir. 2004) (state consumer fraud claims challenging rates filed with FERC properly removable). Cf. Dreamscape Design, Inc. v. Affinity Network, Inc., 414 F.3d 665, 671-72 (7th Cir. 2005) (suits challenging filed rates arise under federal law).

### Allegations of the Complaints

The complaints allege a fraudulent conspiracy on the part of utility defendants, the wholesale defendants, and two holding company defendants to rig a 2006 wholesale electric power auction as a result of which the utility defendants purchased electricity

for resale to Illinois consumers. The utility defendants are COMED, AMERENCILCO, AMERENCIPS, AND AMERENIP. The wholesale defendants are EXELON GENERATING CO. LLC, CONSTELLATION ENERGY COMMODITIES GROUP, INC., DYNEGY POWER MARKETING, INC., J.P. MORGAN VENTURES ENERGY CORP., AMEREN ENERGY MARKETING COMPANY, AMERICAN ELECTRIC POWER SERVICE CORPORATION, CONECTIV ENERGY SUPPLY, INC. DTE ENERGY TRADING, INC., EDISON MISSION MARKETING, INC., ENERGY AMERICA, LLC, FPL ENERGY POWER MARKETING, INC., J. ARON & COMPANY, MORGAN STANLEY CAPITAL GROUP, INC., PPL ENERGYPLUS, LLC, AND INTEGRYS ENERGY SERVICES, INC. The holding company defendants are EXELON CORPORATION AND AMEREN CORPORATION.

It is alleged that, by rigging the power auction, the wholesale defendants are able to charge approximately double the marginal cost of producing electricity to serve the utility defendants' customers. As a direct result, retail electric charges are more than three times marginal cost more than 90% of the time. The charges are also 40% higher than prices for comparable power in other electric utility markets. Consumers have seen up to triple digit increases in their bills since January 2007.

In September 2006, ComEd and the Ameren companies held a descending clock, fixed price auction to purchase electricity. Electricity suppliers submitted bids over the internet for 17-, 29-, and 41-month residential electric contracts and a 17-month

industrial contract. The combined peak load to be served by this auction was 25,474 MegaWatts("MW"). The weighted average clearing price produced by the auction was $70.14 per MW hour ("MWH"), approximately twice the marginal cost of producing electricity.

Plaintiffs allege that a recent study by Argonne National Laboratory and the University of Illinois found that 90% of the time the marginal cost of supplying electricity in the region is only between $20 and $28/MWH, and 95% of the time the marginal cost of production is under $36/MWH. Plaintiffs allege that, in the absence of collusion or manipulation, basic economic principles would lead to a price much closer to the marginal cost than yielded by the auction.

The biggest winner of the power auction is alleged to be ComEd's affiliate Exelon Generation which won the right to supply most of ComEd's requirements.

Plaintiffs also contend that FERC lacks authority to provide filed rate protection for the MBR tariffs resulting from the Illinois auction and that its orders doing so were ultra vires.

### Regulatory and Legislative Proceedings

The wholesale defendants are public utilities subject to FERC regulation under the Federal Power Act ("FPA"), 16 U.S.C. § 791(a) et seq. They engage in sales of wholesale electricity

pursuant to MBR tariffs approved and on file with FERC. On a motion to dismiss, this court can take judicial notice of the rates on file with, and the publications of, FERC and the Illinois Commerce Commission ("ICC"). See Anderson v. Simon, 217 F.3d 472, 474-75 (7th Cir. 2000); Menominee Indian Tribe of Wis. v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998). FERC found that each of the wholesale defendants lacked or had adequately mitigated market power and had met FERC's standards for MBR authority. FERC's regulations expressly prohibit any form of market manipulation in wholesale markets. 18 C.F.R. § 1c.2 (2006).

The utility defendants are public utilities under Illinois law subject to the jurisdiction of the ICC. The rates they charge are approved by and on file with the ICC. In 1997, the Illinois legislature passed the Electric Service Customer Choice and Rate Relief Law, 220 ILCS 5/16. The Act created a transition period from December 16, 1997 until January 1, 2007. During this period, rates were frozen while utilities were permitted to sell their generating plants to affiliates or third parties and enter into contracts to buy wholesale power terminating around January 1, 2007. On January 24, 2006, the ICC issued orders approving an Illinois wholesale power auction to be run by an independent auction manager and supervised by an auction monitor.

Exelon Generating Company and Ameren Energy Marketing Company, affiliates of the utility defendants, filed applications with FERC requesting authorization to make wholesale sales to their utility affiliates through the Illinois auction process if their bids proved to be successful. FERC found that the auction provided the necessary "transparency, definition, evaluation and oversight." Commonwealth Edison Co., 113 FERC ¶ 61,278, 62,117 (Dec. 16, 2005), reh'g denied, 115 FERC ¶ 61,133 (May 1, 2006), appeal dismissed, Illinois v. FERC, 2007 WL 3229482 (D.C. Cir. Oct. 10, 2006); Ameren Energy Mktg. Co., 115 FERC ¶ 61,286, 62,021 (June 1, 2006).

The Illinois auction was held in September 2006 and approved by the ICC.

On March 16, 2007, the State of Illinois, by Attorney General Lisa Madigan, filed a complaint with FERC under the FPA, alleging that the wholesale rates resulting from the Illinois auction were unjust and unreasonable, requesting investigation of possible collusion and anti-competitive behavior by sixteen wholesale suppliers, and requesting revocation of MBR authority of sellers found to have engaged in such wrongdoing. FERC Docket No. EL07-47-000. Plaintiffs' complaints subsequently filed in the Circuit Court of Cook County repeat the same allegations, adding no new facts.

Subsequent to the filing of the instant cases, the utility defendants entered into electric rate increase negotiations with the Illinois Attorney General which also involved the Illinois legislature. On October 4, 2007, FERC entered an order dismissing the Illinois complaint and terminating the proceedings on motion of the Illinois Attorney General. Paragraph 2 of the order states: "The Illinois AG states that the parties have entered into a settlement that requires the Illinois AG to seek an order dismissing the complaint with prejudice. The settlement was contingent upon subsequent approval by the Illinois General Assembly and enactment by the Illinois Governor. The Illinois General Assembly approved legislation related to the settlement on July 26, 2007 and the Governor signed the legislation on August 28, 2007." FERC's specific order, however, recites only that the complaint is "dismissed and the proceedings terminated."

With respect to the purchased power costs of the utility defendants, the settlement legislation states in part:

> The electric utility shall also recover its full costs of procuring electric supply for which it contracted before the effective date of this Section in conjunction with the provision of full requirements service under fixed-price bundled service tariffs subsequent to December 31, 2006. All such costs shall be deemed to have been prudently incurred.

220 ILCS 5/16-111.5(1) (as amended by Pub. Act 95-481 effective Aug. 28, 2007).

The parties were requested to file additional briefs stating their positions with respect to the effect of the dismissal of the Illinois FERC complaint and the legislation approving the settlement.

Plaintiffs contend that the FERC dismissal has no impact on the pending cases because the complaint was dismissed without FERC having reached or considered the merits. Plaintiffs are correct that neither the doctrines of res judicata nor collateral estoppel can apply without an adjudication on the merits or an opportunity to adjudicate the merits on the part of a party in privity with the plaintiffs. A settlement when no fair and full litigation occurred is not subject to an estoppel claim. Mizuho Corp. Bank (USA) v. Cory & Assocs., 341 F.3d 644, 653 (7th Cir. 2003); Rockford Mut. Ins. Co. v. Amerisure Ins. Co., 925 F.2d 193, 198 (7th Cir. 1991). Defendants do not argue otherwise.

Plaintiffs also argue that the recently enacted Illinois legislation approving the electric rate increase settlement is not relevant because the statute only allows recovery of "prudently incurred" costs, and they are seeking to recover illegal profits. Plaintiffs ignore that the legislation states the wholesale electric "costs shall be deemed to have been

prudently incurred." Moreover, at the very least, the retail rates, with ICC and legislative approval, fall within the ambit of filed rates.

## Motion to Dismiss

Defendants argue that the complaints fail as a matter of law because, under federal and Illinois law, the filed rate doctrine precludes plaintiffs' action, the FPA preempts claims, and the complaints lack factual support sufficient to state a cause of action.

The filed rate doctrine bars all claims that challenge a rate that a federal agency has reviewed and filed. E. & J. Gallo Winery v. Encana Corp., 503 F.3d 1027, 1033-35 (9th Cir. 2007); Wah Chang v. Duke Energy Trading & Mktg., LLC, ___ F.3d ___, 2007 WL 4111910 *2 (9th Cir. Nov. 20, 2007); County of Stanislaus v. Pac. Gas & Elec. Co., 114 F.3d 858, 866 (9th Cir. 1997). Plaintiffs respond that defendants have filed no rates of any kind with FERC but only submitted papers describing the auction which they intended to conduct. However, in addition to approving the auction structure, FERC approved and accepted for filing the MBR tariff of each wholesale defendant. The MBR tariffs and orders approving filing for each wholesale defendant are available at FERC's MBR page at

http://ferc.gov/industries/electric/gen-info/mbr/list.asp. The MBR tariffs constitute FERC authorization of the market-based rates charged by each wholesale defendant, including the Illinois auction rates attacked here. FERC grants such authority only after determining that the market-based rate seller lacks or has adequately mitigated market power.

Market-based rates for sales made pursuant to FERC-approved tariffs are filed rates within the meaning of the filed rate doctrine. Gallo, 503 F.3d at 1039-44; Wah Chang, 2007 WL 4111910 at *1; Louisiana Energy & Power Auth. v. FERC, 141 F.3d 364, 369-71 (D.C. Cir. 1998) (approving use of MBR tariffs for wholesale sellers of electricity under the FPA); California ex rel. Lockyer v. FERC, 383 F.3d 1006, 1012-13 (9th Cir. 2004), cert. denied, 127 S. Ct. 2972 (2007); Pub. Util. Dist. No. 1 of Snohomish County v. Dynegy Power Mktg., Inc., 384 F.3d 756, 761 (9th Cir. 2004) (filed rate doctrine bars state law claims challenging market-based rates); Dynegy, 375 F.3d at 852-53; Pub. Util. Dist. No. 1 of Grays Harbor County, Wash. v. IDACORP, Inc., 379 F.3d 641, 650-52 (9th Cir. 2004) (holding that market-based rates "do not fall outside of the purview of the [filed rate] doctrine").

None of the decisions plaintiffs cite support their contention that the filed rate doctrine is inapplicable to the

market-based rates at issue here. The cited cases involved circumstances where there was no validly filed rate at issue, Florida Mun. Power Agency v. Florida Power & Light Co., 64 F.3d 614, 616 (11th Cir. 1995) (rates on file did not apply to service at issue); In re Lower Lake Erie Iron Ore Antitrust Litig., 998 F.2d 1144, 1159 (3d Cir. 1993) (claims involved non-rate activities); where challenges were brought to prices set above the regulated minimum, Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc., 253 F. Supp. 2d 262, 275-76 (D. Conn. 2003); or the sales in question were not subject to FERC regulation, Gallo, 503 F.3d at 1045-48.[4] Plaintiffs, however, are attempting to challenge market-based rates made pursuant to, and authorized by, the wholesale defendants' MBR tariffs, which were filed with FERC.

Plaintiffs also contend that FERC lacks authority under the FPA to provide filed rate protection for the market-based rates resulting from the Illinois auction and that FERC's orders approving the auction were ultra vires. Those arguments, however, constitute a collateral attack on FERC's orders implementing a market-based rate system and approving the Illinois auction. Plaintiffs cannot challenge those rates in

---

[4] Plaintiffs cited to the district court decision in Gallo. After plaintiffs' brief was filed, the Ninth Circuit affirmed the district court.

this court. Under the FPA, a party may challenge a FERC decision only by seeking rehearing before FERC and, if rehearing is denied, petitioning a Court of Appeals for review. See FPA §§ 313(a) & (b), 16 U.S.C. § 825l(a) & (b); City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 336 (1958) ("Congress in § 313(b) prescribed the specific, complete and exclusive mode for judicial review of the Commission's orders.") Following the correct procedure, the Illinois Attorney General sought rehearing of FERC's orders approving the Illinois auction and petitioned for review of one such order. See Commonwealth Edison Co., 113 FERC ¶ 61,278; Ameren Energy Mktg. Co., 115 FERC ¶ 61,286.

Plaintiffs assert that they do not seek to challenge the reasonableness of FERC-approved rates. The complaints on their face seek relief for allegedly unreasonable wholesale electricity prices. Plaintiffs do not explain how this court could grant such relief without first determining what constitutes a "reasonable" price for electricity. The right to a reasonable rate is the right to the rate which FERC files or fixes. Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 251 (1951).

Although plaintiffs disclaim any attack on the retail rates, they seek damages in "[t]he amount by which Defendants' illegal, inequitable, and unfair trade practices have inflated

the prices paid by members of the Class for electrical service over the amounts they would have paid in a competitive market unaffected by Defendants' illegal acts." Compl. ¶ 62(d). Plaintiffs state that "consumers have been forced to pay supra-competitive prices" because alleged overcharges have been passed on to them in their retail rates. The prices that retail customers pay for electricity flow from retail tariffs filed with and approved by the ICC. The ICC expressly approved the use of the Illinois auction to secure electricity at wholesale to supply to retail customers and approved the retail rates by which retail customers would be charged for that electricity. The Illinois auction wholesale prices were passed on in retail electricity rates pursuant to the retail utility defendants' ICC-approved retail rates.

Plaintiffs rely on Globalcom, Inc. v. ICC, 347 Ill. App. 3d 592, 806 N.E.2d 1194 (1st Dist. 2004), to support their claim for damages. There, the plaintiff brought a complaint before the ICC charging anti-competitive conduct and claiming that the terms of an interim tariff under which Illinois Bell Telephone Co. ("SBC") offered network service violated specific provisions of the Illinois Public Utilities Act. The ICC agreed and awarded damages. On appeal, SBC argued that the ICC's award of damages violated the Illinois filed rate doctrine

because SBC's interim tariff was on file with the ICC. The Illinois Appellate Court rejected SBC's argument, finding that Globalcom had not challenged SBC's rates per se, but rather had challenged a requirement contained in the interim tariff that the ICC had found to be unlawful. Globalcom properly brought its action before the ICC. Here plaintiffs did not complain to the ICC; rather they chose to pursue their claim in court.

Plaintiffs' argument that their claims fall outside the scope of FERC's exclusive jurisdiction because they involve "intrastate" electricity sales is contrary to the FPA and well-established Supreme Court precedent. Plaintiffs' "intrastate" argument rests solely on the claim that all of the plaintiffs are located in Illinois, and all of the actions involve electric sales in Illinois. The FPA makes clear, however, that the scope of FERC's exclusive jurisdiction does not turn on an analysis of where the electricity is consumed. FPA § 201(c), 16 U.S.C. § 824(c), provides that "electric energy shall be held to be transmitted in interstate commerce if transmitted from a State and consumed at any point outside thereof; . . . ." See also Jersey Cent. Power & Light Co. v. FPC, 319 U.S. 61, 71 (1943) (jurisdiction is not limited "to the energy at the instant it crosses the state line and so only to the facilities which cross the line and only to the company which owns the facilities which

cross the line"). In FPC v. Florida Power & Light Co., 404 U.S. 453, 463 (1972), the Supreme Court held that jurisdiction attaches even where power from a particular seller cannot be directly traced to power sold in another state; rather, the "assertion that energy [from the seller] commingles in a bus [with energy leaving the bus for interstate sale] is . . . sufficient to sustain jurisdiction." See also New York v. FERC, 535 U.S. 1, 16 (2002) ("transmissions on the interconnected national grids constitute transmissions in interstate commerce").

The FPA preempts state-law consumer fraud, unjust enrichment, and unfair competition claims such as those being asserted here. Wah Chang, 2007 WL 4111910 at *2; Gallo, 503 F.3d at 1043; Snohomish, 384 F.3d at 761; Grays Harbor, 379 F.3d at 647; Dynegy, 375 F.3d at 852-53. Cf. Bastien v. AT&T Wireless Servs. Inc., 205 F.3d 983, 989 (7th Cir. 2000). Plaintiffs' claims would require the Court to consider matters regarding the reasonableness of rates that are exclusively entrusted to FERC. Gallo, 503 F.3d at 1041.

Plaintiffs imply that FPA preemption of state law claims leaves electricity consumers without a remedy. However, the FPA provides persons with the opportunity to file a complaint and obtain any appropriate relief. See 16 U.S.C. § 824e; see also 18 C.F.R. § 385.206. This is the course the Illinois Attorney

General followed in filing a complaint with FERC. That proceeding was not dismissed with prejudice. Plaintiffs remain free to file such a complaint with FERC or the ICC. The lack of a court remedy is the consequence of a federal statutory scheme assigning FERC the exclusive authority to determine a reasonable rate. See Gallo, 503 F.3d at 1044-45; Stanislaus, 114 F.3d at 862; Wah Chang, 2007 WL 4111910 at *3.[5]

As a matter of pleadings, the complaints fall short of the requirements of Fed. R. Civ. P. 8 under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007). The Court noted that an allegation of parallel conduct, like a naked assertion of conspiracy, is not enough to state a conspiracy claim. Id. at 1965-66. Further "factual enhancement" is required. Plaintiffs recharacterize their claims as allegations of "tangible, observable and affirmative parallel conduct," Pl. Answer Br. at 16, but the complaints do not identify or describe any alleged parallel conduct. The complaints here "furnish[] no clue as to which of the

---

[5] This court is aware of the startling higher retail electric rates that have followed the introduction of market-based wholesale rates as noted by Judge Fletcher in her concurring opinion in Gallo, 503 F.3d at 1049 n.1. Also, Judge Pregerson dissented in Wah Chang, 2007 WL 4111910 at *5, because of his view that the filed rate doctrine should not be extended to market-based tariffs without further consideration of possible illegal anti-trust and manipulative practices. However, in the present state of law, these concerns are properly addressed by regulatory bodies or higher courts.

[defendants] supposedly agreed, or when and where the illicit agreement took place." Twombly, 127 S. Ct. at 1970 n.10.

Based on the filed rate doctrine and federal preemption, these cases will be dismissed. However, dismissal will be without prejudice to the right of plaintiffs to file a complaint with FERC or the ICC seeking relief.

IT IS THEREFORE ORDERED that defendants' motions to dismiss are granted. The Clerk of the Court is directed to enter separate judgments in favor of defendants and against named plaintiffs (1) dismissing named plaintiffs' cases (No. 07 C 2316 and No. 07 C 2318) without prejudice to the right of plaintiffs to seek relief from the Federal Energy Regulatory Commission or from the Illinois Commerce Commission, and (2) dismissing the putative class claims in each case without prejudice.

ENTER:

*[signature]*
UNITED STATES DISTRICT JUDGE

DATED: DECEMBER 21, 2007